FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff and Counterdefendant-Appellee, v. BARRY ABLIN *et al.*, Defendants (Barry Ablin *et al.*, Counterplaintiffs-Appellants).

First District (3rd Division)   No. 88—424

Opinion filed December 14, 1988.

Ralph A. Mantynband, of Arvey, Hodes, Costello & Burman, of Chicago, for appellants.

David L. Hazan, of DeHaan & Richter, P.C., of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, FDIC, as receiver of United of America Bank, (the Bank), brought this action against defendants Barry and Esther Ablin to foreclose a mortgage on their residential real estate. The trial court granted summary judgment in favor of plaintiff and ordered the foreclosure and sale of defendants' home, and granted plaintiff's petition for attorney fees. On appeal, defendants contend the trial court erred in entering summary judgment because material facts were in dispute regarding the rate of interest to be applied to the note secured by the real estate. Defendants further maintain that the trial court abused its discretion in dismissing their counterclaim and prohibiting an amended answer asserting an affirmative defense under the Federal Truth in Lending Act (TILA) (15 U.S.C. §1601 et seq. (1982)). Defendants also challenge the award of attorney fees to plaintiff.

On May 12, 1983, defendants executed a note with the Bank for $107,000, putting up a mortgage on their home as collateral. The interest rate to be charged on the mortgage note was "2% over the bank's prime rate as it may change from time to time, with a floor on loan rate of 12½%." Between May 12, 1983, and April 2, 1984, defendants paid $10,973.43 as interest on the mortgage.

On April 24, 1984, the Bank failed and plaintiff was appointed as receiver. At the time of the Banks' failure, the unpaid principal balance on defendants' loan was $107,000. On February 7, 1986, plaintiff filed a complaint for foreclosure and other relief.

On February 6, 1987, defendants rescinded the transaction and demanded return of all the money they had paid. On February 13, 1987, defendants filed a counterclaim alleging that neither the Bank nor plaintiff as receiver provided defendants with notice of the right to rescind the loan transaction as required by TILA. (15 U.S.C. §1601 et seq. (1982) (and the regulations promulgated thereunder, 12 C.F.R. §226.1 et seq. (1988)).) Defendants sought return of all interest and other fees paid on the loan. Defendants also alleged the above

violation as an affirmative defense in their first amended answer.

The trial court dismissed defendants' counterclaim with prejudice on the grounds that the claim was barred by the three-year statute of limitations stated in 15 U.S.C. §1635(f) (1982). The trial court granted defendants leave to file a second amended answer provided that the second amended answer did not contain affirmative matters previously ruled on by the court. Defendants filed a notice of reservation of rights of appeal to ensure that by tendering a second amended answer with affirmative defenses, they were not waiving the rights or claims set forth in the initial affirmative defenses.

Defendants' second amended answer asserted that the rate of interest being charged by plaintiff was based on a nonexistent prime rate and was further barred by the Illinois usury statute (Ill. Rev. Stat. 1985, ch. 17, par. 6413).

Plaintiff filed a motion for summary judgment and attached the affidavit of John Donovan, a bank liquidation specialist with plaintiff, who attested to the fact that defendants failed to make payments due under the note. Plaintiff's motion for summary judgment listed the amount of principal and interest outstanding on defendants' note.

Defendants filed a response to the motion for summary judgment challenging the calculation of interest owed. Defendants filed the affidavit of Professor William Bryan, former director of the Bank for more than three years prior to its closing. Bryan attested that at all times while he was director, the Bank officers determined the Bank's prime rate. The Bank had no fixed formula or standard for determining the prime rate but rather observed the rates being announced by other Chicago area banks. Defendants maintained that because the Bank determined its own prime rate, there was no prime rate after the date that the Bank closed.

Plaintiff filed an additional affidavit of Donovan in which he attested that with regard to liquidation of the Bank, it was determined that the Bank would follow the prime rate declared by Continental Illinois Bank in setting the Bank's prime rate. Thus, plaintiff used Continental's prime rate for computations of amounts due plaintiff as receiver. Plaintiff used a rate of between 20% and 21% to determine the amount of interest defendants owed plaintiff. The trial court granted summary judgment in favor of plaintiff.

Defendants contend on appeal that the trial court erred in dismissing their counterclaim alleging violations of TILA. The counterclaim asserted that either the Bank or plaintiff was obligated under the provisions of TILA to deliver two copies of a notice of the right to rescind the transaction in a separate document. Defendants also

stated that plaintiff or the Bank failed to advise them as to the correct annual percentage rate of interest. On plaintiff's motion, the trial court dismissed the counterclaim for failure to file the claim within three years of the date of the transaction as required by the Act 15 U.S.C. §1635 (1982).

TILA states:

> "Sec. 1635. Right of rescission as to certain transactions. (a) Except as otherwise provided in this section, in the case of any consumer credit transaction *** in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide *** appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." 15 U.S.C. §1635(a) (1982).

Section 1635(f), however, states that an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section have not been delivered to the obligor. 15 U.S.C. §1635(f) (1982).

Plaintiff sought dismissal of defendants' counterclaim on the basis that it was filed more than three years after the date of the execution of the note. Defendants argue that their claim is not barred by this statute of limitations because it was pled in the form of a counterclaim and setoff. No Illinois court has ruled on whether a claim under section 1635 of TILA asserted in the form of a counterclaim or setoff survives the three-year time limitation. However, a similar claim was made in regard to the one-year statute of limitations expressed in section 1640(e) of the same Act in *Wood Acceptance Co. v. King* (1974), 18 Ill. App. 3d 149, 309 N.E.2d 403. In

*Wood,* the trial court dismissed a counterclaim for civil damages under section 1640 of the Act for failure to file the claim within one year from the date of the occurrence of the alleged violations as required by the Act. (15 U.S.C. §1640(e) (1973).) On appeal, this court permitted the counterclaim after the one-year time limitation, relying on section 17 of the Illinois Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 18), which allows a defendant to plead a setoff or counterclaim barred by the statute of limitations. The court looked to the purpose of the Limitations Act and the purpose of TILA and found that the one-year limitation in which to bring the Federal right is not such an integral part of TILA as to outweigh the combined purposes of that act and section 17 of the Limitations Act. The *Wood* court emphasized that TILA is intended to safeguard the consumer in connection with the utilization of credit and its enforcement is accomplished largely through the institution of civil actions. The court therefore stated that the placement of such responsibility on the often unknowledgeable consumer lends support for the conclusion that the penalty sought to be imposed on violators of the Act should not be circumvented where the debtor's obligation is not stale and is · raised in a counterclaim arising out of the same occurrence. See also *Public Finance Corp. v. Riddle* (1980), 83 Ill. App. 3d 417, 403 N.E.2d 1316; *National Boulevard Bank v. Thompson* (1980), 85 Ill. App. 3d 1145, 407 N.E.2d 739.

In 1980, section 1640 of TILA was amended to cover the situation presented in *Wood Acceptance.* The statute now reads:

"(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or setoff in such action, except as otherwise proved by State law." 15 U.S.C. §1640(e) (1982).

Plaintiff acknowledges this exception to the limitation clause in section 1640 and attempts to distinguish the limitation clause of section 1635 and the situation in the present case. Plaintiff relies on the difference in types of disclosure between the two sections which may form the basis for relief. Plaintiff also emphasizes the fact that courts have used different treatment in applying the remedies of rescission and damages in accordance with sections 1635 and 1640, respectively. Finally, plaintiff places heavy emphasis on the fact that

both sections were amended in 1980, and the section 1635 amendment did not include language, as did the section 1640 amendment, specifically stating that a defense in the way of a recoupment or set-off is not barred.

Although we have found no Illinois authority, the precise question before us was decided by the Colorado Supreme Court in *Dawe v. Merchants Mortgage & Trust Corp.* (Colo. 1984), 683 P.2d 796. There, a lender filed a complaint seeking judgment on the unpaid principal of a note. The borrowers then notified the lenders of their intention to exercise their right to rescind the land sale agreement under section 1635 of TILA. The trial court held that the borrowers' right to rescind was barred by the three-year statute of limitations contained in section 1635(f).

On review, the court in *Dawe* noted the general rule that a statute of limitations, although barring the use of a claim for affirmative relief after the limitations period has run, is not a bar to asserting that claim as a defense. The court compared the situation to the related question of whether the one-year statute of limitations contained in section 1640 may be used defensively to defeat a claim for damages under that section. The *Dawe* court found that the borrowers' defense emerges from the transaction upon which the lender's complaint was based, and their claim was in the nature of recoupment. The court looked to the purpose of TILA, and concluded that if recoupment claims were barred by the relevant statute of limitations, lenders could avoid the penalties of the Act by waiting three years or more to sue on the borrowers' default, and thereby frustrate the fundamental policy of TILA. Thus, the court held that the petitioners' demand for rescission was not barred by the limitations period set forth in section 1635(f).

■ The present case is subject to the same analysis. Defendants' counterclaim under section 1635 of TILA emerges from the transaction upon which plaintiff's claim is based. The counterclaim seeks rescission of the transaction for a violation of the Act. We believe that the three-year limitation in section 1635 does not bar defendants' counterclaim in the present case, and we reverse its dismissal.

■ Based on our holding regarding the counterclaim, we must also reverse the granting of summary judgment and remand the case to the trial court. It would be anomalous to allow summary judgment in favor of plaintiff based upon defendants' nonpayment of their debt when the possibility exists that the transaction may be rescinded. See *Amato v. Edmonds* (1980), 87 Ill. App. 3d 68, 408 N.E.2d 1172.

In view of our holding, it is, of course unnecessary to consider

396

the propriety of the award of attorney fees to plaintiff.

For the reasons stated, the judgment of the circuit court of Cook County dismissing defendants' counterclaim and granting summary judgment in favor of plaintiff is reversed, and the cause is remanded for further proceedings not inconsistent with the holdings of this opinion.

Judgment reversed and remanded.

RIZZI and FREEMAN, JJ., concur.