692 So.2d 146 (1997)
David R. BEACH, et ux., Petitioners,
v.
GREAT WESTERN BANK, etc., Respondent.
No. 87835.
Supreme Court of Florida.
February 13, 1997.
Rehearing Denied April 25, 1997.
*147 James A. Bonfiglio, Boynton Beach, for Petitioners.
Steven Ellison of Broad and Cassel, West Palm Beach, for Respondent.
PER CURIAM.
We have for review Beach v. Great Western Bank, 670 So.2d 986 (Fla. 4th DCA 1996). We accepted jurisdiction to answer the following question certified to be of great public importance:[1]
UNDER FLORIDA LAW, MAY AN ACTION FOR STATUTORY RIGHT OF RESCISSION PURSUANT TO THE TRUTH IN LENDING ACT, 15 U.S.C.A. SECTION 1635, BE REVIVED AS A DEFENSE IN RECOUPMENT BEYOND THE THREE-YEAR LIMIT ON THE RIGHT OF RESCISSION SET FORTH IN SECTION 1635(f)?
670 So.2d at 994.
For the reasons expressed below, we answer the certified question in the negative and approve the Fourth District's decision. We find the majority's opinion persuasive and well-reasoned. The dissent is equally cogent; however, we believe the cases relied upon therein simply use the inappropriate analysis for statutory rescission by equating the expiration period with a statute of limitations. Nevertheless, we commend both the majority and the dissent for their thoughtful and comprehensive examination of the issue before us.

MATERIAL FACTS
Petitioners David and Linda Beach (the Beaches) obtained a bank mortgage to finance their home construction in 1985. The loan was a hybrid construction/home loan mortgage as it reflected a thirty-year payout. Beach v. Great Western Bank, 670 So.2d 986, 989 (Fla. 4th DCA 1996). Upon completion of construction, the Beaches moved in, made two payments, and then secured another loan from Respondent Great Western Bank (Great Western) in August 1986. The Beaches used those loan proceeds to pay off and satisfy the initial loan. Id. at 989. Great Western provided the Beaches with Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667 (1994), disclosure documents and, at the closing, notified them of their absolute right to rescind the agreement within three business days following the transaction.[2]
Five years later on December 1, 1991, the Beaches defaulted on their mortgage after failing to make their installment payments. 670 So.2d at 989. Subsequently, Great Western instituted a foreclosure action in June 1992. In response, the Beaches raised several affirmative defenses, including their right to rescind and TILA damage claims. The basis of the Beaches' rescission claim was several overstatements made by Great Western on the disclosure documents. The trial court found that Great Western overstated the Beaches' monthly mortgage payment by *148 fifty-eight cents ($.58), resulting in a $201.84 overcharge. The court also found that Great Western overstated the finance charge by $7.24 ($176,519.21 rather than $176,511.97). The trial court ruled for Great Western on the rescission issue, finding that the loan was an exempt transaction not subject to rescission,[3] and that the Beaches' failure to assert their rescission right within three years of closing precluded their claim. 670 So.2d at 989. However, the trial court awarded the Beaches $396 in actual damages and $1000 in statutory damages as provided by TILA[4] to remedy the overstatements, set them off against the balance due Great Western, and found Great Western's lien superior to all other encumbrances. 670 So.2d at 989.
On appeal to the Fourth District, the Beaches contended that they could assert their rescission right as a defense in recoupment for TILA violations even beyond the three-year period fixed by the statute. Id. at 990. The district court disagreed, concluding that recoupment is primarily an equitable remedy designed to prevent unjust enrichment. Id. Recognizing that the statute already provides borrowers a right to assert damages as a defense in recoupment, the court deemed the further remedy of rescission as a penalty provision to creditors and further noted that the rescission right was purely a creation of the statute itself and the statute specifically fixed a time limitation on the right. Id. at 990-93. Consequently, the district court affirmed the trial court's final judgment, holding that under Florida law the statutory right of rescission in TILA expires three years after the transaction's closing date and may not be revived as a defense in recoupment in a creditor's foreclosure action. Id. at 993. Finally, recognizing the potential significance of its decision to thousands of other Florida borrowers, the district court certified the above question for our review. Id. at 994.

LAW AND ANALYSIS
As the district court acknowledges, there is a "split of authority in the country on this issue," Beach, 670 So.2d at 990 n. 2, of whether the right of rescission may be asserted as a defense in recoupment for TILA violations beyond the statute's three-year expiration period. We begin our analysis with an overview of TILA and the relevant caselaw.
In 1968, Congress enacted TILA with the broad purpose of ensuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." See 15 U.S.C. § 1601(a)(1994). As part of the Act, Congress provided the consumer with the absolute right to rescind the secured transaction within three business days following closing for any reason, and up to three years from the same closing date if the creditor failed to make all material disclosures. Section 1635(f) of 15 U.S.C. (1994), expressly provides: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first...." When a borrower exercises his or her right to rescind in either of the above circumstances, he or she is not liable for any finance or other charges, and any security interest given by the borrower becomes void upon rescission.[5] The end result is that the lender can only collect on the loan principal and loses any security for the loan's collection. Beach, 670 So.2d at 989.
*149 TILA also provides for actual and statutory damages in section 1640(a). Furthermore, while section 1640(e) includes a one-year statute of limitations, it also specifically "does not bar a person from asserting a violation ... in an action to collect the debt... as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." This savings clause is only found in this section relating to damages; no corresponding clause accompanies the expiration of the statutory right of rescission in section 1635.
Congress also recognized that the complexity and variety of credit transactions precluded comprehensive regulation by a single statute. Accordingly, it delegated extensive authority to the Federal Reserve Board to implement regulations governing commerce in credit. 15 U.S.C. § 1604(a). In this case, the result was Part 226 of Title 12 of the Code of Federal Regulations, better known as Regulation Z. Selected Commercial Statutes 1543 (West Publishing Co., 1995 ed.).
The United States Supreme Court has stated that "deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Administrative expertise in this highly technical area should be recognized "[u]nless demonstrably irrational." Milhollin, 444 U.S. at 565, 100 S.Ct. at 797. While an agency's interpretation of its own regulations has traditionally been accorded considerable respect, see Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), deference is all the more appropriate in this case as "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law." Milhollin, 444 U.S. at 566, 100 S.Ct. at 797. Thus, any analysis of a TILA issue should include Regulation Z and the Official Commentary thereto, see Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266, 2273-74, 68 L.Ed.2d 783 (1981), in addition to the statute's plain language.
Regulation Z treats the right of rescission as follows:
The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.
12 C.F.R. § 226.23(a)(3) (1996) (footnote omitted).
Similarly, the Official Staff Commentary concisely states that "the right to rescind automatically lapses on the occurrence of the earliest of the following three events: [t]he expiration of 3 years after consummation of the transaction...." 12 C.F.R. § 226.23, para. 23(a)(3)3. (Supp. I 1996). Likewise, as previously noted, the statute itself provides:
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first
....
15 U.S.C. § 1635(f) (1994). In conjunction, these three authorities reflect Congress's intent regarding rights of rescission under TILA. Their clarity and plain meaning support the majority opinion below.[6] However, that does not end our inquiry.
*150 In Florida, "[i]t is well established that the defense of recoupment may be asserted defensively where the underlying claim is barred by the statute of limitations." Willoughby v. Dowda & Fields, Chartered, 643 So.2d 1098, 1099 (Fla. 5th DCA 1994) (on rehearing); see also Allie v. Ionata, 503 So.2d 1237 (Fla.1987); Payne v. Nicholson, 100 Fla. 1459, 131 So. 324 (1930). Similarly, this principle informed the court in Dawe v. Merchants Mortgage & Trust Corp., 683 P.2d 796 (Colo.1984),[7] a case the Beaches and the dissent below rely upon.
In Dawe, the Colorado Supreme Court held that the borrower's demand for rescission was a defense in the nature of recoupment and was not barred by section 1635(f)'s three-year expiration period. However, as noted by the district court, the Dawe court simply assumed that section 1635(f) was a statute of limitations which precluded a remedy, rather than a statute which created the right and the remedy, and included its own expiration period. Beach, 670 So.2d at 992.
Moreover, the borrowers in Dawe defaulted less than a year after consummating their loan, well within TILA's three-year rescission window. However, the creditor did not seek a judgment for the unpaid principal until more than four years later, outside the three-year window. The creditor's apparent bad faith clearly influenced the Dawe court as it concluded that if "recoupment claims were barred by the relevant statute of limitations, lenders could avoid the penalties of the Act by waiting, as here, three years or more to sue on the borrower's default, and thereby frustrate the fundamental policy of TILA." 683 P.2d at 801. In short, the Dawe court used a statute of limitations analysis and a strong inference of creditor bad faith with which to justify its rescission of the loan agreement beyond the three-year expiration period.
The Dawe court also relied on Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) to reach its equitable result. In Bull, the Court ordered recoupment as an offset of estate taxes mistakenly paid on a transaction, which had been raised as a defense to an IRS suit for the payment of back income taxes on the same transaction. 295 U.S. at 261, 55 S.Ct. at 700. The Court recognized that "[w]hile here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights." Id. Thus, as the district court stated, "[r]ecoupment was therefore equitable in nature to prevent an unjust result." Beach, 670 So.2d at 990. In contrast, the inequities which undoubtedly influenced the decisions in Dawe and Bull are not present in the case before us.
The Beaches and the dissent below also place great reliance on our decisions in Allie v. Ionata, 503 So.2d 1237 (Fla.1987), Rybovich Boat Works v. Atkins, 585 So.2d 270 (Fla.1991), and Beekner v. L.P. Kaufman, Inc., 145 Fla. 152, 198 So. 794 (1940). However, all of these cases addressed statutes of limitation and are thus distinguishable. None of the cases addressed a TILA-type statute where the act created the right and provided a remedy.
In Allie, petitioner Allie (Ionata's accountant and financial advisor) sold respondent Ionata several parcels of land whose prices Ionata eventually found (several years later) to be severely overinflated. Ionata stopped making payments and sued for restitution and rescission, alleging fraud and breach of fiduciary duty. In response, petitioner Allie pled the four-year statute of limitations as an affirmative defense and counterclaimed for the unpaid balance on two of the notes. At trial, the jury found Allie not guilty of actual fraud, but did find he breached his fiduciary duty. On appeal, the Fifth District found respondent Ionata's action on two of the notes barred by the statute of limitations. Upon review, we held that a counterclaim of *151 recoupment of money damages may be asserted even though the underlying claim itself would have been timebarred if raised as a separate cause of action. Allie, 503 So.2d at 1239-40.
In Rybovich, respondent Atkins entered into a land purchase contract in June 1985 with petitioner Rybovich. Atkins never gave Rybovich the required seven-days' advance notice of the closing date. The closing, which could occur no later than December 1987, never took place. In February 1988, the parties exchanged letters each declaring the other in default. Later that month, Rybovich entered into another contract to sell the property to a third party. Upon hearing of the pending sale, Atkins' attorney informed the title company insuring the sale that Atkins had an interest in said property. Consequently, the title company would not insure the property against Atkins' claim and the entire transaction failed. Rybovich sued Atkins for breach of contract, tortious interference with the second transaction, and slander of title. Atkins counterclaimed for, among other things, specific performance of the original land sale contract. Rybovich responded that the specific performance claim was barred by the one-year statute of limitations and the trial court agreed.
On certiorari review, the Fourth District relied on Allie and quashed the trial court's order. We, in turn, quashed the district court's decision and reinstated the trial court's order, refusing to permit Atkins' assertion of the time-barred claim for specific performance as a defense to Rybovich's damages action. We explained that allowing such a claim "would have the effect of placing a cloud on the title of any real property that was the subject of a failed contract for purchase and sale." Rybovich, 585 So.2d at 271. We noted the harshness of specific performance and recognized that "[a]dequate remedies remain available to buyers...." Id. at 272. Those remedies included common law rescission of contracts, not statutory rescission as in this case.
In Beekner, petitioner Beekner raised the defense of usury (25% interest rate) in a collection action by respondent Cappel to foreclose a mortgage securing notes for a loan. We considered the question of whether the usury defense provided in section 6942, Compiled General Laws (1927), could be precluded by the two-year statute of limitations included in section 4663, Compiled General Laws (1927). We allowed the usury defense, noting that "a contrary holding would enable the lender to purge a usury-infected contract by the simple process of awaiting the running of the statute of limitations before bringing his suit." Beekner, 145 Fla. at 156, 198 So. at 796.
After closely reviewing Allie, Rybovich, and Beekner, we conclude that none of those cases addressed the specific situation found here where a statute simultaneously created a right and its remedy. Furthermore, and just as significantly, the losing party in each of those cases demonstrated bad faith conduct, a factor not present in the case before us. Thus, we find that Allie, Rybovich, and Beekner are not controlling.
Turning to this case, the district court concluded that "[t]o allow the consumer to assert the expired right of rescission in recoupment as a matter of public policy where Congress has not chosen to extend it does not sufficiently provide us with a public policy reason for extending recoupment." Beach, 670 So.2d at 993. Moreover, the district court's rationale further distinguishes this case from Allie as that case was decided "primarily on considerations of public policy and fairness as well as an analysis of the purpose of statutes of limitation." Rybovich, 585 So.2d at 271. We also noted that
[f]undamental fairness required this result in Allie. A contrary holding would have authorized plaintiffs to take advantage of technical quirks in the law to file their lawsuits after defendants' counterclaims have become timebarred. Under such a scheme, even the grossest misconduct by the plaintiff could be excluded from the court's consideration. Statutes of limitation are intended to promote fairness, not to encourage this type of misconduct.
Id. Unlike Dawe and Allie, no such manipulation of technical defenses occurred in this case. On the contrary, we agree with the district court that the real danger is that *152 borrowers "could take advantage of the remedy throughout the entire life of the secured transaction, rendering the statutory limitation meaningless." Beach, 670 So.2d at 991. The Beaches' three-year limit on the right of rescission expired in 1989. They subsequently defaulted in December 1991 and Great Western filed its foreclosure action in June 1992. Great Western exercised its foreclosure rights only after the Beaches failed to meet their obligation. Thus, by making their monthly mortgage payments, the Beaches' had full control over Great Western's "ability to foreclose on its security interest in the residence." Id. Furthermore, the Beaches' remedy to the overstatement  damages  was extraneous to the foreclosure action. The savings clause in section 1640 preserved that option beyond the one-year statute of limitations as a "defense by recoupment or setoff."
In contrast, Congress did not include such a savings clause in section 1635 regarding the right of rescission. Indeed, section 1635(f) explicitly provides that both the right and the remedy expire three years after the closing date. Thus, as the district court notes, TILA mirrors a statute of repose, not a statute of limitations, 670 So.2d at 992 n. 3, in that it "precludes a right of action after a specified time ... rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued." Kush v. Lloyd, 616 So.2d 415, 420 (Fla.1992).
As a general rule, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Therefore, despite the Beaches' assertion that section 1635(f) should not be given its plain meaning, we read that section as unambiguously expressing Congress's intent to extinguish the statutory right of rescission three years after the transaction's closing.
Similarly, this Court traditionally has avoided "readings that would render part of a statute meaningless." Unruh v. State, 669 So.2d 242, 245 (Fla.1996); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992); Villery v. Florida Parole & Probation Comm'n, 396 So.2d 1107 (Fla.1980); Cilento v. State, 377 So.2d 663 (Fla.1979). Underlying that caution is our assumption that legislatures do not "enact purposeless and therefore useless, legislation." Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla.1962). Furthermore, "[w]hen the legislature has used a term ... in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded." Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995); see also Florida State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88 (Fla.1949) ("The legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction....").
More precisely, we have long recognized that "when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right." Bowery v. Babbit, 99 Fla. 1151, 1163-64, 128 So. 801, 806 (1930). In Bowery, we emphasized that the "statute limiting the time to bring suit ... is not regarded as a technical statute of limitations." 99 Fla. at 1164, 128 So. at 807. Therefore, Bowery controls our interpretation of TILA under Florida law. As we have detailed, Allie, Rybovich, and Beekner all addressed distinct and separate questions of law and thus we are unpersuaded by the Beaches' and the lower court dissent's extensive citation of those cases.
Consistent with Bowery, the Fifth Circuit's opinion in Simon v. United States, 244 F.2d 703 (5th Cir.1957) reflected federal statutory construction principles when it reasoned:
A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability *153 and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right.
Id. at 704-05 (quoting 34 Am.Jur. Limitation of Actions § 7 (1941)); see also Maahs v. United States, 840 F.2d 863, 866 n. 4 (11th Cir.1988) (explaining difference between statutes of limitation and expiration period in Federal Tort Claims Act, which created previously non-existent right to sue government in tort, noting under FTCA "very right to sue evaporates after the expiration of the stated time"). Thus, as stated in the district court's opinion, "Florida law and federal law appear consistent as to the proper analysis of this statute." Beach, 670 So.2d at 992. We agree with the district court's analysis. Therefore, we hold that under Florida law, an action for statutory right of rescission pursuant to 15 U.S.C. § 1635 may not be revived as a defense in recoupment beyond the three-year expiration period contained in section 1635(f).

CONCLUSION
The facts of this case do not compel us to disregard a statute's plain meaning. If "[r]ecoupment is the keeping back of something that is due because there is an equitable reason for holding it[,]" Williams v. Neely, 134 F. 1, 5 (8th Cir.1904), the Beaches' claims have little merit. As the district court stated, "[t]he further remedy of rescission under TILA is a penalty provision to the creditor, not a remedy required by equity and good conscience beyond the statutory period of three years." Beach, 670 So.2d at 990.
Accordingly, we approve the decision below and answer the certified question in the negative. We decline to address the other issues raised by the Beaches which were neither in the district court's opinion nor within the scope of the certified question.
It is so ordered.
OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., recused.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] TILA also allows rescission up to three years after the transaction if the creditor fails to make all material disclosures to the borrower. This three-year extension, section 1635(f), based upon the lender's bad faith in not disclosing material terms, is the key provision at issue in this case. Material disclosures include the loan's annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule.
[3] "Residential mortgage transactions" are exempt from TILA's rescission requirements. Section 1602(w) defines these loans as "created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."
[4] Section 1640 provides for actual and statutory damages and includes a one-year statute of limitations in subsection (e). However, section 1640(e) also contains a savings clause which specifically allows "defense by recoupment or set-off" beyond the one-year statute of limitation.
[5] This is in contrast to common law rescission whereby the rescinding party must first tender the property received under the agreement before the contract is considered void. See Joel P. Bishop, Commentaries on the Law of Contracts § 833 (Enlarged ed. 1887); see also Kamerman v. Curtis, 285 N.Y. 221, 33 N.E.2d 530 (1941); E.T.C. Corp. v. Title Guarantee & Trust Co., 271 N.Y. 124, 2 N.E.2d 284 (1936).
[6] Of note, Congress enacted TILA amendments in 1995. Although the new provision does not relate to this case's factual situation, the committee report ("Committee Report Regarding Truth-in-Lending Act Amendments of 1995, Section 113, Rescission Rights in Foreclosure") reiterates the plain meaning of the statute. Specifically, "[t]he consumer protection provisions in this section are intended to benefit consumers that are unable to meet their mortgage obligations and are not intended as a mechanism whereby consumers can avoid their obligations by defaulting and then raising the defense in foreclosure." Furthermore, "[r]escission rights expire in three years. The time period shall not be extended except as explicitly provided in section 125(f) relating to agency enforcement proceedings." That exception does not apply to this case.
[7] Relying on Dawe, similar reasoning was used in Federal Deposit Insurance Corp. v. Ablin, 177 III.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379 (1988); Community National Bank & Trust Co. v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629 (N.Y.App.Div.1988); In re Shaw, 178 B.R. 380 (Bankr.D.N.J.1994); and In re Botelho, 195 B.R. 558 (Bankr.D.Mass.1996).